

IN THE

# Court of Appeals of Indiana

EHF-INDIANA4, LLC, as successor in interest to
GMF-INDIANA4, LLC,

*Appellant-Respondent*



FILED

Aug 13 2026, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

M&M Investment Group LLC and First Merchants Bank,

*Appellees-Petitioners*

August 13, 2026

Court of Appeals Case No.
25A-TP-2505

Appeal from the Warrick Circuit Court

The Honorable Greg A. Granger, Judge

Trial Court Cause No.
87C01-2310-TP-1816

**Opinion by Judge Weissmann**
Chief Judge Tavitas and Judge Foley concur.

**Weissmann, Judge.**

[1] After EHF-INDIANA4, LLC (EHF) fell behind on roughly $45,000 in property taxes on its multi-million-dollar apartment complex, the property was sold for $182,000 through a tax sale. EHF later objected to the buyer's petition for the deed, claiming the tax sale proceeding constituted an unconstitutional taking and an excessive fine. EHF argued that the compensation for the loss should be based on the property's fair market value, rather than the mere surplus proceeds from the tax sale. The trial court rejected EHF's arguments and granted the buyer's petition for the deed. EHF appealed.

[2] While this appeal was pending, the United States Supreme Court decided *Pung v. Isabella Cnty.*, 146 S. Ct. 1964 (2026), in which nearly identical claims were rejected. Finding *Pung* forecloses EHF's constitutional claims, we affirm.

## Facts

[3] In 2022, EHF became the owner of an apartment complex (the Property) in Warrick County. EHF was the successor in interest to GMF-INDIANA4, LLC (GMF). The Property consists primarily of 121 residential units serving low-income, elderly, and disabled tenants through government housing assistance programs.

[4] By September 2022, EHF was delinquent on its property taxes, ultimately owing $45,279.16 in taxes, special assessments, penalties, and costs. Warrick County (the County) soon initiated proceedings to collect the delinquent taxes through a tax sale proceeding. Tax sale proceedings are governed by Indiana

statutes that require, among other things, the sale of a tax sale "certificate" to the highest bidder at public auction, multiple notices to the property owner, a one-year buy-back period followed by a petition for the tax deed, and the opportunity for the property owner to recover the surplus proceeds from the tax sale after the delinquent amount is paid. *See generally* Ind. Code chs. 6-1.1-24 & -25.

In October 2022, M&M Investment Group LLC (M&M) purchased the Property's tax sale certificate for $182,123 at an online auction. M&M then sent the statutorily required notices to the Property's owner, using both the address listed in the records of the County's auditor and the address of EHF's registered agent, as reflected on the Indiana Secretary of State website. Over the following year, the Property was never redeemed. The redemption period expired on October 6, 2023.

M&M then petitioned the trial court to issue a tax deed for the Property, and EHF objected. The parties filed cross-motions for summary judgment. EHF argued that M&M's notice was inadequate and that selling the Property posed equity issues and would displace its low-income tenants. EHF also alleged two constitutional violations: (1) the return of the mere surplus from the tax sale was not just compensation for the loss of the Property, constituting a taking; and (2) the issuance of the tax deed was an excessive fine. EHF argued that these constitutional violations could be brought against M&M, a private entity, because M&M became a state actor when it jointly engaged in the tax sale proceedings with the County. M&M, on the other hand, argued that all

requirements of Indiana's tax sale statutes were met, that notice was adequate, that the equity argument was irrelevant, and that EHF's constitutional claims were baseless.

[7] The trial court denied the cross-motions for summary judgment and set the matter for a bench trial in March 2025. At that trial, EHF presented two witnesses: a housing expert, who opined that M&M likely could not continue to serve the Property's low-income tenants, and EHF's president, who claimed EHF did not receive actual notice. The parties also stipulated numerous exhibits, including two appraisals for the Property ranging from $3.3 million (EHF's appraisal) to roughly $6.2-6.5 million (M&M's appraisal). The exhibits also showed that notices were delivered, with signature confirmations, to the address listed in the County Auditor's records for the Property—which had been unchanged from the address of the prior owner, GMF—and to EHF's registered agent in Indianapolis. Notices were not sent to EHF's primary business address.

[8] As for the constitutional arguments, the parties discussed the U.S. Supreme Court's decision in *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023), the primary authority relied upon by EHF. In *Tyler*, a county retained the surplus proceeds from a tax sale. The Supreme Court held that the county could not "confiscate more property than was due" and that doing so effected a taking. *Id.* at 639. The Court recognized that "a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 642. M&M argued that Indiana's statutory scheme was adequate under *Tyler* because it provided for the return of the surplus proceeds from the

sale. EHF claimed that *Tyler* more broadly established a protected interest in the equity of a property, measured by its fair market value.

[9] In September 2025, the trial court entered its order directing the County Auditor to issue the tax deed to M&M, finding adequate notice and all other statutory requirements met. The court also rejected EHF's constitutional claims, finding that M&M was not a state actor and, alternatively, that EHF had "no protected property interest in surplus equity over and above the surplus proceeds generated at a tax sale." Appellant's App. Vol. II, p. 30. The court did not specifically address the excessive fines claim.

[10] EHF appealed, renewing only its constitutional claims. Soon after, EHF petitioned for and was granted the surplus proceeds of the sale—the remaining funds after the delinquency was paid from the tax sale price of $182,123.[1]

[11] EHF requested oral argument, and this Court granted the request. However, M&M soon filed a motion to continue oral argument pending a decision from the U.S. Supreme Court—*Pung v. Isabella Cnty.*, 146 S. Ct. 1964, 1968 (2026)— in which similar issues were presented. This Court granted the motion and ordered simultaneous supplemental briefing on the effect of *Pung*, which was

---

[1] Both parties state in their appellate briefs that the surplus returned to EHF was $51,564.57, citing Appellant's Appendix Volume IV, pages 77-80. However, those pages demonstrate only that the trial court granted EHF's petition for any surplus funds and ordered the County Auditor and/or Treasurer to "pay any and all remaining surplus funds" without specifying the amount of the surplus returned. *Id.* at 80.

handed down by the Supreme Court on June 23, 2026. Both EHF and M&M filed supplemental briefs.[2]

## Discussion and Decision

[12] EHF appeals the trial court's order directing the County's auditor to issue the tax deed and rejecting EHF's constitutional claims. We generally review a trial court's findings and judgment for clear error. *Schafer v. Borchert*, 55 N.E.3d 914, 917 (Ind. Ct. App. 2016). But where, as here, the relevant facts are undisputed and the questions presented are purely legal, our review is de novo. *See id.*

[13] On appeal, EHF first attempts to establish that M&M constitutes a state actor based on its joint action with the County in the tax sale proceedings. Then, EHF argues that the Indiana tax sale statutes, as applied here, constitute an unconstitutional taking and an excessive fine. EHF explicitly abandoned on appeal its arguments as to inadequate notice and equity issues.

[14] After examining the *Pung* decision, we determine that EHF's takings claim and excessive fines claim fail, even if we assume M&M was a state actor.

---

[2] First Merchants Bank is also listed as an appellee but is not separately represented in this appeal. M&M does not address this, but EHF states in its brief: "The Appellees were treated for all intents and purposes as a singular party at the trial court level. . . . This omission of First Merchants Bank is immaterial for purposes of the takings and excessive fines analysis given both were private third-party purchasers of a tax certificate for the Property." Appellant's Br., p. 16.

## I. *Pung* and Supplemental Briefing

In *Pung,* a Michigan county foreclosed on a home to collect a $2,241.93 tax debt. 146 S. Ct. at 1967. The home was sold at auction for $76,008, though it had an assessed value of $194,400. *Id.* at 1967-68. The county then retained the entire sale amount. *Id.* at 1968. When Pung sued for compensation, he was awarded the surplus proceeds from the tax sale. *Id.* But Pung appealed, arguing his compensation should be measured by the home's fair market value, rather than the tax sale price, and that failing to do so violated the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment. *See id.* After the Sixth Circuit rejected Pung's claims, the U.S. Supreme Court granted certiorari. *Id.*

The first question presented in *Pung* was "whether 'just compensation' following a tax sale is measured by the price that the property fetched at auction or its hypothetical fair market value." *Id.* The Court concluded that "auction price is the proper baseline, at least when the procedure is fair in light of our country's history of tax sales." *Id.*[3] Thus, "the owner is entitled to the surplus sale proceeds—nothing less, and nothing more." *Id.* at 1969-70. The Court found that "Pung's fair-market-value theory would impose unprecedented burdens on jurisdictions that wish to collect unpaid taxes and might well make tax sales impractical." *Id.* at 1971. "[T]ax sales are designed to collect unpaid

---

[3] The Court declined to resolve Pung's "newfound" arguments as to the fairness of the sale procedures, leaving any such arguments for remand, if properly preserved. *Pung*, 146 S. Ct. at 1972.

taxes without undue delay and administrative expense" and "by their very nature . . . are incompatible with" techniques that maximize sale price. *Id.*

[17] The Court rejected Pung's excessive fines claim for similar reasons. It found that Pung's fair market value theory, which was the foundation for his excessive fines claim too, lacked support in history or precedent. *Id.* at 1973. Applying it to the Eighth Amendment could create "the same difficulties that would attend [Pung]'s Fifth Amendment theory." *Id.* The Court concluded that "[t]he Eighth Amendment offers no greater protections" than the Fifth Amendment. *Id.*

[18] In its post-*Pung* supplemental brief, EHF conceded *Pung*'s primary holdings, restating them as follows:

> (1) the "baseline" for measuring just compensation in the tax sale context is the tax sale price, not the property's hypothetical fair market value, as long as the sale is fairly conducted in light of our country's history of tax sales; and
>
> (2) returning only the surplus proceeds from a fairly conducted tax sale does not violate the Eight[h] Amendment.

EHF's Suppl. Br., p. 2 (filed July 6, 2026). However, EHF argues that *Pung* leaves open three questions: (1) whether M&M was a state actor; (2) whether Indiana's tax sale scheme, as applied here, is unconstitutional because it fails to ensure that tax sales "are fairly conducted to maximize proceeds"; and (3) whether *Pung* applies to claims under the Indiana Constitution. *Id.*

In its post-*Pung* supplemental brief, M&M contends that *Pung* controls and is dispositive of the claims presented. M&M argues that EHF on appeal did not raise an issue with notice or otherwise argue the sale process was unfair.

## II. Takings Claim

EHF raises its takings claim under the Fifth Amendment to the U.S. Constitution and Article 1, § 21 of the Indiana Constitution. The former provides that private property shall not "be taken for public use, without just compensation," and the latter provides that "[n]o person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." U.S. Const. amend. V; Ind. Const. art. 1, § 21. EHF presents a single analysis, citing our Supreme Court's holding that "the state and federal takings clauses are textually indistinguishable and are to be analyzed identically." *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009).[4]

Before *Pung*, EHF argued that it held a protected property interest in the equity of the Property, which must be measured by the fair market value. According to EHF, the surplus from the tax sale "did not provide just compensation for the loss of millions of dollars," per the appraised value of the Property. Appellant's

---

[4] Because EHF applied this unified analysis, we find EHF has waived any claim that *Pung* may not apply to its takings claim under the Indiana Constitution. *See White v. State*, 199 N.E.3d 1249, 1253 n.3 (Ind. Ct. App. 2022) (noting that failure to provide separate analysis under state constitution results in waiver of state constitutional claim), *trans. denied*.

Br., p. 43. EHF claims that "[j]ust compensation is correctly measured by the owner's loss—the property's fair market value at the time of the taking—not by the amount the government happens to realize in a forced sale that it controls." Appellant's Reply Br., p. 7.

[22]     But *Pung* rejected this very theory of fair market valuation and held instead that sale price is the baseline for measuring just compensation in a tax deed sale. *See* 146 S. Ct. at 1968. The former owner "is entitled to the surplus sale proceeds—nothing less, and nothing more." *Id.* at 1969-70. EHF undisputedly petitioned for and was granted the surplus proceeds from the tax sale, which is precisely the compensation *Pung* holds is sufficient.

[23]     We recognize that *Pung*'s holding carries a caveat: the auction price is the baseline "at least when the sale is fairly conducted in light of our country's history of tax sales." *Id.* at 1967. But EHF does not challenge the fairness of the sale on appeal. In fact, EHF explicitly noted that it abandoned its arguments on "a lack of notice and a housing issue, both of which are not part of this appeal." Appellant's Br., p. 14.[5]

---

[5] At one point in its reply brief, EHF argues that Indiana's tax sale statutes lack "safeguards" to maximize sale price, used by other states and in other areas of Indiana law. Appellant's Reply Br., p. 24. But this was raised in the context of measuring just compensation and in response to M&M's argument that "'the only legitimate evidence' of what a foreclosed property is worth 'is the foreclosure-sale price itself'" because the value of a property sold in a forced sale is inherently lower. Appellee's Br., pp. 24-25 (quoting *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 537 (1994)). Thus, we cannot read EHF's argument as challenging the fairness of the tax sale proceeding. Moreover, the *Pung* Court was presented with and rejected the similar argument that tax sales "frequently yield less" than a conventional sale. 146 S. Ct. at 1971 (citing *BFP*, 511 U.S. at 539).

For this same reason, we also reject the one-sentence argument EHF raises in its supplemental brief that a question remains as to whether Indiana's tax sale scheme, as applied here, is unconstitutional because it fails to ensure that tax sales "are fairly conducted to maximize proceeds." EHF's Suppl. Br., p. 2.

EHF's takings argument and its related as-applied challenge fail.

## III. Excessive Fines Claim

EHF raises its excessive fines claim under both the Eighth Amendment to the U.S. Constitution and Article 1, § 16 of the Indiana Constitution. The former prohibits "excessive fines," and the latter prohibits "[e]xcessive fines" while mandating that "[a]ll penalties shall be proportioned to the nature of the offense." U.S. Const. amend. VIII; Ind. Const. art. 1, § 16. EHF treats these provisions as coextensive and expressly chose to "utilize the same analysis for both its federal and state constitutional claims." Appellant's Br., p. 53. EHF applies only the Eighth Amendment analysis and does not argue that the Indiana Constitution provides greater or different protections. EHF has therefore waived any distinct claim under the Indiana Constitution. *See White*, 199 N.E.3d at 1253 n.3.

Like its takings claim, EHF's excessive fines argument relies wholly on the fair market value of the Property, which mirrors the theory rejected in *Pung*. The plaintiff in *Pung* argued that the county's "failure to compensate him for the fair market value of his property constituted an excessive fine." 146 S. Ct. at 1973. Here, EHF claims the "forfeiture of between $3,248,435.43 and $6,498,435.43

in EHF's equity constituted a punitive sanction grossly disproportionate to the $45,279.16 delinquent tax debt." Appellant's Br., pp. 10-11. Thus, EHF's calculation of the allegedly excessive fine, and its subsequent proportionality analysis, are based solely on EHF's calculation of the Property's fair market value, measured by its appraisals.

[28]  *Pung*'s rejection of the fair market value theory—in both the takings and the excessive fines contexts—nullifies the core of EHF's claim. *Pung* also explicitly determined that "the Eighth Amendment Excessive Fines Clause does not require the government to return more than the surplus proceeds" following a tax sale because "[n]either the Fifth nor the Eighth Amendment requires the government to compensate former owners based on the hypothetical fair market value of their property." 146 S. Ct. at 1967. This defeats EHF's excessive fines claim and its related as-applied challenge.

## Conclusion

[29]  EHF's constitutional claims as to the proper measure of just compensation and the proportionality of a fine are both grounded in a theory that uses fair market value to calculate a loss. That theory was rejected in *Pung*, which held that the auction price is the baseline for just compensation and the Eighth Amendment provides no further protection. "Neither the Fifth nor the Eighth Amendment requires the government to compensate former owners based on the hypothetical fair market value of their property." *Id.*

[30]     EHF received the surplus proceeds of the tax sale and does not challenge the fairness of the sale on appeal. This meets the baseline for just compensation in tax sale proceedings, as set out in *Pung*. The trial court's order directing issuance of the tax deed is affirmed.

Tavitas, C.J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

James D. Johnson
Mark T. Abell
Chandler A. Lacy
Jackson Kelly PLLC
Evansville, Indiana

ATTORNEY FOR APPELLEE

Cassandra A. Nielsen
Krieg DeVault LLP
Indianapolis, Indiana